UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

NICHOLAS T. YORK,

    Petitioner,

v.

AMBER SUNDQUIST,

    Respondent.

Case No. 3:23-cv-01054-MTK

**OPINION AND ORDER**

KASUBHAI, District Judge.

    Petitioner brings this habeas corpus Petition pursuant to 28 U.S.C. § 2254 challenging his state court conviction for Sexual Abuse in the First Degree. Petitioner claims that his trial counsel provided constitutionally ineffective assistance by failing to seek suppression of statements Petitioner made to law enforcement officials. Petitioner's claim was denied by a decision of the Oregon courts that is reasonable and entitled to deference, and the Petition is DENIED.

BACKGROUND

    In the fall of 2017, Petitioner was living with his mother in Milwaukie, Oregon. DG, who had been a caregiver for Petitioner's mother, lived nearby. During the afternoon of September 16, 2017, Petitioner walked into DG's home as she was taking a nap, forcibly removed her

1  - OPINION AND ORDER

underwear, and sexually assaulted her. *See* Resp't Ex. 118 (filed under seal). The assault stopped after Petitioner's mother and a friend came to DG's house in response to text messages DG sent as she tried to escape. *Id.* at 4.

Later that evening, City of Milwaukie Police officers contacted Petitioner at his home. Officer Foreman knew Petitioner from "frequent police contacts and bulletins, usually related to mental health issues, drug use, and unwanted behavior." *Id.* at 3. Officer Foreman asked Petitioner if he would speak with the officers, and Petitioner agreed. As they spoke in the front doorway, Officer Foreman asked Petitioner if he would like to sit down, and Petitioner sat down in a chair on the front porch. *Id.* at 5. Officer Foreman questioned Petitioner about what happened that evening, and Petitioner eventually told Officer Foreman that he had entered DG's home and "they had engaged in some sex acts." *Id.* Petitioner explained that the front door to DG's home was unlocked, even though the door "was always locked when he checks it." *Id.* Petitioner stated that he entered DG's home and locked the door behind him, because he and DG "were going to have sex." *Id.* at 7. Petitioner described his assault of DG, admitting that "put his finger in [DG's] butt" and inserted his tongue and fingers in DG's vagina. *Id.* at 6. Petitioner also admitted that DG had told him to stop several times. *Id.* at 6-7.

Officer Foreman placed Petitioner under arrest, and, during a pat-down search, discovered a plastic bag with a white crystal substance that subsequently tested positive for methamphetamine. Resp't Ex. 118 at 8. Officer Foreman read Petitioner his *Miranda* rights from a prepared card, and Petitioner asked why Officer Foreman had not provided *Miranda* warnings before they spoke. *Id.* Officer Foreman answered that he did not do so because Petitioner was not under arrest at that time. *Id.* Officer Foreman then asked Petitioner if he understood his rights, and Petitioner indicated that he did and asked if he could call his attorney. Officer Foreman ceased questioning Petitioner after he invoked his right to counsel. *Id.*

2    - OPINION AND ORDER

Petitioner was charged by indictment with Unlawful Sexual Penetration in the First Degree, Sexual Abuse in the First Degree, Attempted Rape in the First Degree, Burglary in the First Degree, and Unlawful Possession of Methamphetamine. Resp't Ex. 102.

As the case proceeded, Petitioner's counsel sought a neuropsychological evaluation of Petitioner and indicated Petitioner's intent to assert "a Mental Disease or Defect – Guilty Except for Insanity defense." Resp't Ex. 109 at 3-4; Resp't Ex. 116 at 20-21, 28-29, 38-39. Two expert evaluations of Petitioner did not support an insanity defense and the case proceeded to trial. Resp't Exs. 119-20.

During jury selection, Petitioner spoke up and said, "I don't feel comfortable with going on at this point." Resp't Ex. 110 at 123. After the trial court and the parties completed the jury selection process, the court asked Petitioner about his previous statements. Petitioner answered, "I don't think it's going to be a fair trial, Your Honor." Resp't Ex. 110 at 140. Petitioner explained that he thought the trial process would "be a little different" and expressed concern about his "mental capacity" and ability to testify. Resp't Ex. 110 at 140-41. Petitioner believed that he would not "get[] a fair shake at Clackamas County" and that he was "not mentally able to make the decisions to hurt anybody." Resp't Ex. 110 at 143-44.

After a lunch break, Petitioner refused to participate in the trial and requested a new attorney in order to assert an "insanity defense." Resp't Ex. 110 at 146. When questioned by the court, counsel explained that two evaluations did not support such a defense and that counsel's efforts to obtain a third evaluation were not successful. Resp't Ex. 110 at 147-49. Ultimately, the trial court told Petitioner, "I'm concluding that [counsel has] done everything he can do and he has a reason why he's not pursuing the insanity [defense]" and that "we're going to proceed with the trial." Resp't Ex. 110 at 157-58. Petitioner insisted that he would not be present or participate in the trial, and the court took a recess to allow the parties to confer. Resp't Ex. 158-60.

3   - OPINION AND ORDER

After the break, the parties announced that Petitioner had accepted the State's offer to plead no contest to Sexual Abuse in the First Degree in exchange for the State's dismissal of the remaining four charges. Resp't Ex. 110 at 160-61; Resp't 116 at 59-60. Petitioner's counsel explained that he had talked with Petitioner "to make sure that he understood what was going on, that he was in the right frame of mind to take care of this today, and … he appears to be understanding that and willing to go through with this agreeable resolution." Resp't Ex. 110 at 161. The trial court engaged in a plea colloquy with Petitioner and accepted the plea, finding that Petitioner was "thinking clearly" and his plea "intelligently made," and sentenced petitioner to a 75-month term of imprisonment. Resp't Ex. 110 at 161-63, 166-67.

After dismissal of Petitioner's untimely direct appeal, Petitioner sought post-conviction relief (PCR) on grounds that counsel rendered ineffective assistance by failing to move for the suppression of Petitioner's statements to Officer Foreman. Resp't Ex. 114. The PCR court denied Petitioner's claim, finding that the facts did not support a motion to suppress and that Petitioner failed to show counsel's deficiency or resulting prejudice. Resp't Ex. 131. The Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Resp't Exs. 135-37. Petitioner now seeks federal habeas relief.

DISCUSSION

Petitioner raises one Ground for Relief in his Petition and alleges that trial counsel was ineffective by failing to file a motion to suppress the statements Petitioner made to Officer Foreman prior to his arrest. The PCR court denied this claim on the merits, and Respondent argues that its decision is reasonable and entitled to deference.

Pursuant to 28 U.S.C. § 2254(d), this Court may not grant a petition for a writ of habeas corpus filed by a state prisoner with respect to any claim that was adjudicated on the merits in state court, unless the adjudication resulted in a decision that was "contrary to, or involved an

unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) and (2).

A state court decision is "contrary to" clearly established federal law if it fails to apply the correct Supreme Court authority or reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Thus, "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 793 (2001).

Under the well-established precedent of *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner alleging the ineffective assistance of counsel must show that "counsel's performance was deficient" and the "deficient performance prejudiced the defense." 466 U.S. at 687. To establish deficiency and prejudice, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. In the context of plea proceedings, the petitioner must show that, but for counsel's deficient performance, the petitioner "would not have pleaded guilty and would have insisted on

5   - OPINION AND ORDER

going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (noting that "a defendant must show the outcome of the plea process would have been different with competent advice").

Judicial review of an attorney's performance under *Strickland* is "highly deferential" and must afford counsel "wide latitude … in making tactical decisions." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. In short, a petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* (citation omitted). A "doubly deferential" standard applies when "a federal court reviews a state court's *Strickland* determination," *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010), and the state court "must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 101.

> The PCR court made the following findings when rejecting Petitioner's claim:
>
> Petitioner did not prove that his trial attorney failed to exercise reasonable professional skill and judgment in failing to file a motion to suppress Petitioner's statements to police. Trial counsel testified that he investigated the facts related to Petitioner's statements and did not feel that there was a basis for a motion to suppress. Counsel made a reasonable investigation and reasonably concluded that a motion to suppress would not be successful….
>
> Petitioner has also failed to prove prejudice. Petitioner has not proven that a motion to suppress would have likely been granted if filed. Petitioner was not under arrest and was not interviewed in a custodial setting requiring the prophylactic of being advised of his Miranda Rights. When interviewed, petitioner was not restrained in any manner, but rather was sitting in a chair on his mother's porch. Petitioner failed to prove that this was a custodial setting which required *Miranda* warnings. Petitioner has also failed to prove that his statements to police were involuntary. The circumstances in which petitioner was interviewed were not compelling, as petitioner was not threatened, and no promises were made. There is no allegation of intimidating behavior or restraints

6    - OPINION AND ORDER

> of any type having been utilized. Nor is there any evidence of coercion on the part of the officer.
>
> In addition, even if Petitioner's statements to police at his mother's home had been suppressed, he made similar statements to police when his DNA sample was being taken and in recorded phone calls with family members. Those statements would have been admissible.
>
> Finally, for reasons set forth above, Petitioner has failed to prove that he would have rejected the plea offer and continued with trial if the motion to suppress had been filed. Petitioner decided to accept the plea offer after trial had started and the jury had been selected. Any motion to suppress would have been filed and denied before trial started. In Petitioner's long discussion with the court between the time the jury was selected and when he entered the no contest plea, he made many complaints but never mentioned any unhappiness with his attorney for not filing a motion to suppress. The fact that a motion to suppress was not filed had nothing to do with his decision to accept the plea offer and enter a no contest plea.

Resp't Ex. 131 at 3.

Petitioner argues that the PCR court erroneously found no deficiency, because counsel failed to recognize that Petitioner's psychological evaluations and mental impairments would have supported a motion to suppress on grounds that his statements were involuntary. Petitioner further argues that the PCR court unreasonably found no prejudice, because a motion to suppress would have likely been successful and Petitioner would have insisted on trial. I find that the PCR court's decision is entitled to deference.

Petitioner concedes that he was not in custody when questioned by Officer Foreman and does not argue that his statements should have been suppressed under the Fifth Amendment of the United States Constitution. *See* Pet'r Brief at 22; *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (holding that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination"); *see also California v. Beheler*, 463 U.S. 1121, 1125 (1983) (defining custody as either "'formal arrest or restraint of movement' of the degree associated with a formal arrest") (citation omitted).

7   - OPINION AND ORDER

Rather, Petitioner claims that his statements were subject to suppression under Oregon law because Officer Foreman questioned him under "under 'compelling' circumstances." *See State v. Rodriguez*, 337 Or. App. 728, 735 (2025); Pet'r Brief at 22.

"The question [of] whether the circumstances were compelling does not turn on either the officer's or the suspect's subjective belief or intent; rather, it turns on how a reasonable person in the suspect's position would have understood his or her situation." *State v. Shaff*, 343 Or. 639, 645 (2007). Relevant factors include: "(1) the location of the encounter; (2) the length of the encounter; (3) the amount of pressure exerted on the defendant; and (4) the defendant's ability to terminate the encounter." *Id.* (internal citations and parentheticals omitted). Ultimately, the "overarching inquiry is whether the officers created the sort of police-dominated atmosphere that *Miranda* warnings were intended to counteract." *Id.* at 645-46 (citation omitted).

The PCR court found that Petitioner failed to show that a suppression motion would have been successful under Oregon law, and a state court's determination of state law is binding on this Court. Resp't Ex. 131 at 3; *see Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) (reiterating that "that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus"); *Estelle v. McGuire,* 502 U.S. 62, 67 (1991) (explaining that federal habeas relief is not available to remedy alleged errors of state law). Petitioner cannot establish prejudice if the motion to suppress would have been denied, and he is not entitled to habeas relief on this basis alone.

Further, the PCR court reasonably found that counsel's performance was not deficient. Petitioner's counsel averred that he did not seek suppression of Petitioner's statements because Petitioner "was not under arrest and was not interviewed in a custodial setting requiring the prophylactic of being advised of his Miranda Rights" and Officer Foreman made "no threats or promises" when questioning Petitioner. Resp't Ex. 124 at 1. Counsel also noted that Petitioner

**8    - OPINION AND ORDER**

"denied drinking or taking drugs that day and did not appear to be under the influence of drugs or alcohol" or exhibiting "mental or physical disabilities." *Id.* Based on Petitioner's psychological evaluations and counsel's own interactions with him, counsel believed that Petitioner's "statements were voluntary and, therefore, there was no merit to a Motion to Suppress the statements." *Id.* at 1-2. The PCR credit counsel's statements and found that counsel "reasonably concluded that a motion to suppress would not be successful." Resp't Ex. 131 at 3.

Petitioner contests the PCR court's reliance on counsel's statements and argues that, given evidence of Petitioner's mental disturbances at the time he assaulted DG, counsel should have known that Petitioner "was more susceptible to persuasion than the average person and a motion to suppress his statements was warranted." Pet'r Brief at 19-21, 30. However, the relevant question is not whether counsel "could" have moved for suppression, the question is whether the failure to do so might reasonably be "considered sound trial strategy." *Strickland*, 466 U.S at 689. The record supports the PCR court's findings.

As the PCR court found, Officer Foreman questioned Petitioner on the porch of his mother's home after Petitioner agreed to talk with him. Petitioner does not allege and the record does not reflect that Officer Foreman restrained or coerced Petitioner during their conversation or otherwise exhibited intimidating behavior. Petitioner's questioning lasted under an hour, a period of time that Oregon courts have found to not be compelling. Resp't Ex. 118 at 5, 8; *see also State v. Northcutt*, 246 Or. App. 239, 242, 246 (2011) (finding no compelling circumstances when police questioning lasted ninety minutes); *State v. Heise-Fay*, 274 Or. App. 196, 204 (2015) (finding that officers' presence for over two hours did not create of situation of "prolonged questioning or confinement"). Although Officer Foreman noted that some of Petitioner's answers were "rambling" and required Officer Foreman to "redirect" the conversation, Petitioner was able to answer the questions posed to him and did not appear "to be

9     - OPINION AND ORDER

impaired or display obvious signs of drug use." Resp't Ex. 118 at 7. Based on this record, the PCR court reasonably found that counsel was not deficient by failing to pursue a motion that had little factual support.

The PCR court also reasonably found no prejudice. The PCR court explained that additional incriminating statements of Petitioner would have been presented at trial, even if counsel had successfully moved to suppress Petitioner's pre-arrest statements. For example, as DNA samples were being swabbed from inside his mouth, Petitioner told a police officer that, "I was licking her butt, my DNA is going to be there." Resp't Ex. 131 at 2. While in custody, Petitioner made recorded telephone calls to family members and admitted entering DG's home, locking the door behind him, and digitally penetrating her. Resp't Ex. 125 at 3-16. The PCR court found that these statements "would have been admissible" and the evidence at trial would not have been greatly affected if Petitioner's pre-arrest statements had been suppressed. Resp't Ex. 131 at 3.

Petitioner disputes this finding and argues that his post-arrest statements did not reflect a belief that his "encounter" with DG was nonconsensual, unlike his pre-arrest statements that DG repeatedly told him "no" and to "stop." Pet'r Brief at 34. Petitioner argues that, if his pre-arrest statements had been suppressed, his "post-arrest statements would not have aided the state in proving that he knowingly subjected [DG] to forcible compulsion when engaging in the sexual acts." *Id.* at 35. Regardless, if Petitioner had proceeded to trial, the State would have presented DG's testimony that she told Petitioner "to stop 25 or 30 times" during the assault, along with DG's text messages to Petitioner's mother in which DG states that Petitioner is trying to rape her. *See* Resp't Ex. 118 at 3-5.

Finally, the PCR court found Petitioner not credible and rejected his assertion that he would have rejected the plea if counsel had moved for suppression. The PCR court's credibility

10     - OPINION AND ORDER

findings are binding on this Court and amply supported by the record. 28 U.S.C. § 2254(e)(1); Resp't Ex. 110 at 140-60. Accordingly, the PCR court's decision is not an unreasonable application of *Strickland*.

## CONCLUSION

Petitioner is not entitled to federal habeas relief and the Petition (ECF No. 1) is DENIED. A Certificate of Appealability is DENIED on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 13th day of March 2025.

> s/ Mustafa T. Kasubhai
> MUSTAFA T. KASUBHAI (He / Him)
> United States District Judge

11  - OPINION AND ORDER